UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-80457-CIV-SMITH

BARRY E. MUKAMAL,

    Appellant/Cross-Appellee,

v.

THE NATIONAL CHRISTIAN CHARITABLE
FOUNDATION, INC.,

    Appellee/Cross-Appellant.
_____/

## ORDER ON BANKRUPTCY APPEAL

This matter comes before the Court upon the cross-appeals of Appellant/Cross-Appellee Barry E. Mukamal (in his capacity as Liquidating Trustee for the Palm Beach Finance Partners Liquidating Trust and the Palm Beach Finance II Liquidating Trust) ("Mukamal") and Appellee/Cross-Appellant The National Christian Charitable Foundation, Inc. ("NCF") from two orders entered in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). Mukamal appeals the Bankruptcy Court's "Order Granting Motion for Summary Judgment on Count 1" ("Summary Judgment Order") and Final Judgment; NCF filed a conditional cross-appeal of the Bankruptcy Court's "Order on Competing Motions for Summary Judgment as to Which State's Law Applies to Fraudulent Transfer Claims" ("Choice of Law Order"), for the Court's consideration only if Mukamal is successful in his appeal and the Summary Judgment Order is reversed. The Court has carefully considered Mukamal's Appellant Brief [DE 14], NCF's Appellee Response Brief/Cross-Appellant Brief [DE 25], Mukamal's Appellant Reply Brief/Cross-Appellee Response Brief [DE 31], NCF's Cross-Appellant Reply

1

Brief [DE 34], and the applicable law and documents. For the reasons set forth below, the Summary Judgment Order is affirmed, and thus the Court need not reach the merits of NCF's conditional cross-appeal of the Choice of Law Order.

## I.  BACKGROUND

The underlying Chapter 11 bankruptcy case and the instant appeal stem from a massive Ponzi scheme and its ensuing fallout. Over twenty years ago, Thomas Petters solicited investments to facilitate the purchase of overstock consumer products from manufacturers and suppliers and the sale of those products to major retailers. Petters claimed that he needed financing in order to bridge the time between payment to the suppliers and receipt of payment from the purchasing retailers. Palm Beach Finance Partners, L.P. and Palm Beach Finance II, L.P., the debtors in this case (hereafter "Debtors"), were formed to facilitate investment with Petters's enterprise and as such were heavily invested in it. The financing scheme, however, turned out to be a multi-billion dollar Ponzi scheme, as there never were any agreements to buy or sell merchandise (or any merchandise at all). Petters was arrested in 2008, convicted of several federal crimes, and sentenced to fifty years in prison. The principals of the Debtors were originally introduced to Petters by Frank Vennes, whose company Metro Gem, Inc. ("MGI") had invested in Petters' transactions for years. Vennes and the Debtors' principals each pled guilty to fraud charges and were sent to prison as well.

The Debtors filed for Chapter 11 bankruptcy and initiated myriad adversary proceedings, including the instant action, through their liquidating trustee, Mukamal, seeking to set aside transfers that Vennes had made either personally or through MGI. Four of those transfers were made to NCF, a charitable foundation and the defendant in the underlying proceedings. In late 2005 and in 2006, MGI had made a series of four separate cash contributions to NCF aggregating

$9,010,000, which NCF had agreed in advance it would distribute to another charity. There appears to be no dispute amongst the parties that MGI was suffering from financial distress prior to these transfers, and that these transfers worsened MGI's insolvency, but did not originally cause it. Mukamal also filed suit against Vennes and MGI directly based on fraudulent transfer and tort. That case settled, and Mukamal obtained judgments against Vennes and MGI for $6 million and $90.4 million respectively. Now, as subsequent creditors of MGI, Mukamal seeks to avoid the four allegedly fraudulent transfers made to MCF back in 2005 and 2006. Relevant to this appeal, Count 1 of Mukamal's three-count complaint against NCF seeks to avoid the transfers as fraudulent pursuant to O.C.G.A § 18-2-74 of Georgia's Uniform Fraudulent Transfer Act ("Georgia Act").[1] That statute in pertinent part states as follows:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (. . .)
>
>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>>
>>> (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

O.C.G.A. § 18-2-74(a)(2)(A).

On December 10, 2014, the Bankruptcy Court entered its Choice of Law Order, determining that Georgia law applies to the Mukamal's fraudulent transfer claims.

On March 20, 2019, the Bankruptcy Court entered the Summary Judgment Order, pursuant to which the Bankruptcy Court granted summary judgment in favor of NCF on Count 1 of the

---

[1] Though Georgia adopted the Uniform Voidable Transactions Act in 2015, the Georgia Act is still applicable to the transfers at issue in this case as it was still in force at the time of said transfers.

3

complaint. Having already granted summary judgment in NCF's favor on the other two counts in a previous order, the Bankruptcy Court entered its Final Judgment in favor of NCF. On April 1, 2019, Mukamal timely filed its Notice of Appeal of the Summary Judgment Order and the Final Judgment. Mukamal challenges the Bankruptcy Court's legal conclusion that O.C.G.A. § 18-2-74(a)(2)(A) contains a causation requirement that the transfer at issue must be the cause "for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." This appeal is now ripe for adjudication.

## II. DISCUSSION

### A. Legal Standard on Bankruptcy Appeal

District courts function as appellate courts in reviewing a bankruptcy court's decision. *Williams v. EMC Mortg. Corp.* (*In re Williams*), 216 F.3d 1295, 1296 (11th Cir. 2000). "A district court reviews a bankruptcy court's legal conclusions de novo, and a bankruptcy court's factual findings for clear error." *In re Cummings*, 381 B.R. 810, 822–23 (S.D. Fla. 2007) (citation omitted).

### B. The Bankruptcy Court's Summary Judgment Order

In its Summary Judgment Order, the Bankruptcy Court granted summary judgment in favor of NCF on the fraudulent transfer count. The Bankruptcy Court first notes that O.C.G.A. § 18-2-74(a)(2)(A) requires the plaintiff to prove that (1) MGI did not receive "a reasonably equivalent value in exchange for the transfer," and (2) that MGI "was engaged or was about to engage in a business or transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." The first element being undisputed, the Bankruptcy Court shifts its focus to the second element: whether MGI was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small. The Bankruptcy

4

Court remarks that, for the second time in its orders, it holds that "plaintiff must show that the transfer sought to be avoided bears a causal relationship with, at a minimum, MGI's distressed capital position immediately following the transfer." (Bankr. Order [DE 1 at pp. 5-26] at 4.) That is, Mukamal must show that MGI did not have remaining assets sufficient to maintain its business as a result of the transfer. The Bankruptcy Court proceeds to explain its reasoning as to why the statute requires existence of a causal relationship between the transfer at issue and the remaining assets being unreasonably small.

First, the Bankruptcy Court notes the two different measures of financial distress at the core of Georgia's fraudulent transfer statute: "insolvency" and "unreasonably small assets." The Georgia Act expressly defines "insolvency:" "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." O.C.G.A. § 18-2-72. However, the Georgia Act does not define "unreasonably small assets," nor do parallel provisions of other uniform statutes or the Bankruptcy Code. The Bankruptcy Court cites case law for the proposition that "unreasonably small assets" refers to "the inability to generate sufficient profits to sustain operations." *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1070 (3d Cir. 1992). It continues: "Because an inability to generate enough cash flow to sustain operations must precede an inability to pay obligations as they become due, unreasonably small capital would seem to encompass financial difficulties short of equitable [in]solvency." *Id*. The Bankruptcy Court notes that there are many differences between insolvency and unreasonably small assets, but that "too frequently" are the two falsely equated. (Bankr. Order at 7.)

The Bankruptcy Court also draws a distinction between two types of creditors: "existing (or present) creditors" (those whose claims already exist at the time of a challenged transfer) and "subsequent (or future) creditors" (those whose claims arise after a challenged transfer). In

summarizing the historical development of fraudulent transfer laws, the Bankruptcy Court explains the following with respect to subsequent creditors:

> As the law of fraudulent conveyances developed, subsequent creditors, meaning parties to whom the transferor later became indebted, also sought relief. Recovery was permitted where such subsequent creditors were able to show that the challenged transfer was made with intent to hinder, delay, or defraud future creditors such as themselves. To prove such a case, a subsequent creditor was required to show a connection between the transferor's intent and the harm to the subsequent creditor. In other words, the standing of a subsequent creditor to seek avoidance of a transfer depended in part on its ability to show a causal connection between the transfer and nonpayment of the debt owing to the subsequent creditor.

(Bankr. Order at 8) (citing Bruce A. Markell, *Toward True and Plain Dealing: A Theory of Fraudulent Transfers Involving Unreasonably Small Capital*, 21 Ind. L. Rev. 469, 475-76 (1988)) (internal citations omitted). While existing creditors could prove fraudulent intent through either insolvency or unreasonably small assets, subsequent creditors could not rely on insolvency and thus could only rely on the existence of unreasonably small assets. The Bankruptcy Court notes that while the case law over time began to drop the actual intent to harm requirement, subsequent creditors still had to show "that the transferor's business thereafter lacked reasonable assets or access to capital to cover its foreseeable risks." (*Id.*)

All of this, the Bankruptcy Court explains, was the "state of the law" at the time the Uniform Fraudulent Conveyance Act ("UFCA") was passed in 1918. (*Id.*) Section 5 of the UCFA included a provision permitting subsequent creditors to avoid transfers made "without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital," while also doing away with the requirement to prove actual intent. UFCA § 5. The Bankruptcy Code (1978) and the Uniform Fraudulent Transfer Act ("UFTA") (1984) include similar language. The Bankruptcy Court states that, as a result of this development of the common

6

law, "there is an important distinction between creditors who may pursue claims under the insolvency approach and creditors who may pursue claims under the unreasonably small assets approach." (Bankr. Order at 9.) "Subsequent creditors may not rely on the insolvency of the transferor at the time of the transaction as the basis for a claim. There is some support for the view that this is because subsequent creditors have a better opportunity to determine the transferor's solvency following the transfer and may decline to do business with the transferor." (*Id.* at 10.)

Thus, the Bankruptcy Court maintains:

> Beginning with the common law development of the right of subsequent creditors to avoid conveyances where the transferor was left with insufficient capital, through case law under the UFCA, the UFTA, the Bankruptcy Act, and the Bankruptcy Code, the law has consistently required some level of connection between the transfer sought to be avoided and the transferor's failure to pay the subsequent creditor. "An essential element of this formulation is the presence of a connection between the disputed transfer and non-payment of the creditor's claim. This requirement is historical; section 5 [of the UFCA] was distilled from cases which allowed creditors to attack a transfer only if they could somehow connect their non-payment with some universally agreed inference that the transferor, at a relevant time, knowingly left itself with too little reserves." "The last prerequisite to finding inadequate capital is that the transfer must directly lead to non-payment."

(*Id.*) (quoting 21 Ind. L. Rev. at 499, 504-06) (internal citations omitted).

Turning to the case at hand, the Bankruptcy Court holds that Mukamal, as a subsequent creditor, cannot show that any of the transfers to NCF resulted in MGI having unreasonably small assets, as Mukamal conceded that MGI had unreasonably small assets before any of the transfers at issue in this case. The Bankruptcy Court looks to the language of the Georgia Act, finding:

> The text of the statute itself supports the conclusion that there must be some connection between the transfer and the transferor's financial distress. As the Court pointed out in its prior order on cross-motions for summary judgment, the statute directs the Court to consider the "remaining assets" of the transferor, that is, the assets left after the transfer sought to be avoided. This requires a comparison of the transferor's capital condition before and after the transfer in question. As a start, the plaintiff must show that the transfer at issue left the debtor with unreasonably small capital.

7

(Bankr. Order at 11.) The order cites to several cases in support of this determination. *See, e.g., Pioneer Home Builders, Inc. v. Int'l Bank of Commerce (In re Pioneer Home Builders, Inc.)*, 147 B.R. 889, 893-94 (Bankr. W.D. Tex. 1992); *Bakst v. United States (In re Kane & Kane)*, No. 10-01022-EPK, 2013 Bankr. LEXIS 1139, at *27 (Bankr. S.D. Fla. Mar. 25, 2013)

The Bankruptcy Court also discusses the cases Mukamal cited, distinguishing them or otherwise explaining how they in fact support the court's position. *See, e.g., Askenaizer v. Anderson (In re Catco Recycling, LLC)*, No. 15-1012, 2016 WL 556173 (Bankr. D.N.H. Feb. 10, 2016) (finding of unreasonably small assets unnecessary to relief granted); *Official Comm. of Unsecured Creditors of TOUSA, Inc. v. Citicorp N. Am. (In re TOUSA, Inc.)*, 422 B.R. 783 (Bankr. S.D. Fla. 2009) (acknowledging that transaction at issue was in fact cause of transferor's financial distress); *Manning v. Wallace (In re First Fin. Assocs.)*, 371 B.R. 877 (Bankr. N.D. Ind. 2007) (no analysis of unreasonably small assets claim); *Doctors Hosp. of Hyde Park, Inc. v. Desnick (In re Doctors Hosp. of Hyde Park, Inc.)*, 360 B.R. 787 (Bankr. N.D. Ill. 2007) (appearing that issue of causation not raised before court, as well as the plaintiff being successful on multiple theories of relief); *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) (issue of causation not raised before court); *Gilbert v. Goble (In re N. Am. Clearing, Inc.)*, 2014 WL 4956848 (Bankr. M.D. Fla. Sept. 30, 2014) (providing no explanation on issue); *Samson v. Western Capital Partners LLC (In re Blixseth)*, 514 B.R. 871 (D. Mont. 2014) (same); *Burtch v. Opus, LLC (In re Opus East, LLC)*, 528 B.R. 30 (Bankr. D. Del. 2015) (conflating insolvency and unreasonably small capital). The Bankruptcy Court further notes that the law review article that Mukamal quotes extensively from its brief actually supports its conclusion that fraudulent transfer law in the context of subsequent creditor claims almost universally requires some level of causation. *See* John H. Ginsberg *et al.*, *Befuddlement Betwixt Two Fulcrums: Calibrating the*

*Scales of Justice to Ascertain Fraudulent Transfers in Leveraged Buyouts*, 19 Am. Bankr. Inst. L. Rev. 71 (2011)

In light of the text of the statute, the relevant case law, and the historical development of fraudulent transfer law, the Bankruptcy Court concludes that, to prevail under O.C.G.A. § 18-2-74, Mukamal must show that a payment made by MGI to the defendant left MGI with unreasonably small assets. Based on the record evidence, the Bankruptcy Court found that MGI had unreasonably small assets prior to any of the transfers at issue in count 1 of the complaint and so none of the transfers are actionable under O.C.G.A. § 18-2-74.

### C.     Analysis

The Court has carefully reviewed the Bankruptcy Court's Summary Judgment Order, the parties' pleadings, and all relevant case law. Upon a de novo review of the Bankruptcy Court's legal conclusions, the Court finds the Bankruptcy Court's order to be well-reasoned and correct, and sees no reason to overturn it.

We look first to the plain language of the statute itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). As previously stated, the Georgia Act states that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . [w]ithout receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor[] [w]as engaged or was about to engage in a business or a transaction <u>for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction</u>." O.C.G.A. § 18-2-74(a)(2)(A)  (emphasis added). The underlined portion of the statute is at the heart of the parties' dispute. While Mukamal argues that the plain language contains no causation requirement, NCF contends that the word "remaining" necessarily

9

requires a comparison of the transferor's financial status before and after the transfer and whether this change in status was due to the transfer.

Merriam-Webster Dictionary defines "remaining" as "left over after a part has been destroyed, taken, used, or lost." *Remaining*, *Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/remaining. In relying on this definition, the statute looks to whether the assets "left over after" the transfer sought to be avoided were unreasonably small. As the Bankruptcy Court correctly points out, this necessarily directs a comparison of the debtor's financial status before and after the transfer. If the debtor already had unreasonably small assets at the time of a challenged transfer, then that transfer could not have left the debtor with assets that were comparatively unreasonably small. Thus, the use of "remaining" in the statute directs us to determine whether the challenged transfer shifted the debtor from a status of adequate assets to a status of unreasonably small assets. Mukamal's interpretation of the statute—that is, a focus solely on the current assets of the debtor after the transfer—obviates any need for the word "remaining" in the statute at all. In other words, Mukamal's preferred construction of the statute could read as "[the debtor] [w]as engaged or was about to engage in a business or a transaction for which the [. . .] assets of the debtor were unreasonably small in relation to the business or transaction," without need for the word "remaining." "It is contrary to the generally accepted principles for construing statutes to 'read out' any part of the statute as 'mere surplusage' unless there is a clear reason for doing so." *Exum v. City of Valdosta*, 246 Ga. 169, 170 (1980) (citing O.C.G.A. § 1-3-1).

Mukamal points to the language of another portion of the Georgia Act, O.C.G.A. § 18-2-75(a), as evidence that the drafters of the statute could have included a causation requirement in section 74(a)(2)(A) if they had wanted. Section 75(a) includes the following language: "the debtor

10

was insolvent at that time or the debtor became insolvent as a result of the transfer." Thus, Mukamal argues that section 74(a)(2)(A) would have included the identical language of "as a result of" if it truly contained a causation requirement. The Court is unpersuaded for two reasons. First, Mukamal's argument cuts both ways: just as section 74(a)(2)(A) omits the phrase "as a result of," so too does it omit the phrase "at that time." "At that time" describes the debtor's current financial status, as opposed to "remaining." If the drafters wanted to include "at the time" in section 75(a), they could have done so, but chose not to. As such, and secondly, sections 74(a)(2)(A) and 75(a) address distinct situations. While section 75 applies only to present creditors, section 74(a)(2)(A) applies to either present or future creditors and contains the only means for recovery for future creditors. If the drafters agreed with Mukamal's construction of the statute that the debtor could have had unreasonably small assets at the time of the transfer or as a result of the transfer, then there is no reason why they could not have merged sections 74(a)(2)(A) and 75(a) to read "the debtor was insolvent *or with unreasonably small assets* at that time or the debtor became insolvent *or was with unreasonably small assets* as a result of the transfer." The drafters purposefully delineated between present and future creditors, insolvency and unreasonably small assets, and sections 74 and 75. Thus, the Court is not required to look to section 75(a) for its construction of section 74(a)(2)(A).

While this Court agrees with the Bankruptcy Court that the ordinary meaning of section 74(a)(2)(A) requires causation, to the extent there is doubt as to the drafters' intent or ambiguity as to the statute's use of the word "remaining," the history of the Georgia Act's predecessor laws such as the UFCA and UFTA and corresponding comments strongly support a causation requirement. As previously mentioned, Section 5 of the UCFA permitted subsequent creditors to avoid transfers made "without fair consideration when the person making it is engaged or is about

11

to engage in a business or transaction for which the property <u>remaining in his hands after the conveyance</u> is an unreasonably small capital." UFCA § 5 (emphasis added). The drafters' comments of the UFTA state: "Both Acts [the UFCA of 1918 and the UFTA of 1984] render a transfer made or obligation incurred without adequate consideration to be constructively fraudulent – *i.e.*, without regard to the actual intent of the parties – [where] the debtor <u>was left by the transfer</u> . . . with unreasonably small assets for a transaction or the business in which he was engaged." UFTA, Prefatory Note at 5-6 (emphasis added). Both the UFCA and the UFTA "focus[] attention on whether the amount of all the assets retained by the debtor was inadequate, *i.e.*, unreasonably small, in light of the needs of the business or transaction in which the debtor was engaged or about to engage." *Id.* § 4, Comment 4.

The relevant case law cited across the Summary Judgment Order and the briefs, though limited and primarily based not in Georgia law[2], also supports a causation requirement. *See Pioneer Home Builders, Inc. v. Int'l Bank of Commerce (In re Pioneer Home Builders, Inc.)*, 147 B.R. 889, 893-94 (Bankr. W.D. Tex. 1992) ("both the Bankruptcy Code and TUFTA allow the avoidance of transfers which financially cripple a debtor and leave it with unreasonably small capital;" "both the Bankruptcy Code and TUFTA require that the disputed transfers cause the unreasonably small capital condition. The statutes require a finding that the capital remaining with the debtor as a result of the transfer is unreasonably small"); *Bakst v. United States (In re Kane & Kane)*, No. 10-01022-EPK, 2013 Bankr. LEXIS 1139, at *27 (Bankr. S.D. Fla. Mar. 25, 2013)

---

[2] Even so, Georgia courts have looked to the decisions of other jurisdictions whose equivalent statute to the Georgia Act also mirrors the UFTA. *See Truelove v. Buckley*, 318 Ga. App. 207, 209-11 (Ga. App. 2012) ("The UFTA is modeled on the Uniform Fraudulent Transfer Act promulgated by the National Conference of Commissioners on Uniform State Laws and adopted in various forms by 43 states and the District of Columbia. For this reason, and in light of the dearth of Georgia decisions construing the provisions of the Georgia UFTA, we look to the decisions of other jurisdictions for guidance." (internal quotations omitted)).

12

("Under both federal and Florida law, there must be a causal relationship between the Transfers and the likelihood that the Debtor's business will fail."). The cases Mukamal cites, as factually and legally distinguished by the Bankruptcy Court, do not identify a fact pattern where the unreasonably small assets provision of the relevant statute was the sole basis for avoiding a fraudulent transfer or where that provision was an independent basis for avoidance. *See supra* section II.B. 8. As the Bankruptcy Court succinctly puts it, "[t]he few courts that have explicitly rejected the concept of a 'causal link' fail to recognize the analyses undertaken by scores of courts in deciding fraudulent transfer cases, fail to understand the historical context and intent of this component of fraudulent transfer law and, in the end, ignore the language of the relevant statutes themselves." (Bankr. Order at 20.)

Finally, with respect to Mukamal's concern that the Georgia Act's causation requirement may produce inequitable outcomes, the Bankruptcy Court has already explained why this is by design:

> Perhaps it seems initially strange that where a debtor makes a series of transfers some of which are before its assets are so depleted as to put it into the requisite financial uncertainty, and some of which fall after that point, only one of the transfers may be subject to avoidance as only that one transfer will be the straw that broke the camel's back, being the cause of the debtor having unreasonably small assets. But it must be kept in mind that the claim in question is one that may be brought by a creditor that did not exist at the time of the transfer. For such a creditor, the right obtained is a retrospective one unique to this provision of the law. It is reasonable to require that such a subsequent creditor, at a minimum, be able to point to the transfer sought to be avoided as the reason that the debtor was placed in a position leaving that future creditor at risk. If the debtor was already in financial distress before the transfer in question such that it was foreseeably doomed to insolvency, the recipient of the transfer should not be placed under the burden of a risk it did not create.

(Bankr. Order at 16.) In the simplest of terms, future creditors are different from present creditors, and the text of the Georgia Act and other fraudulent transfer statutes reflects this difference in limiting their options for avoidance.

In sum, and upon much consideration, the Court finds and agrees with the Bankruptcy Court that the Georgia Act contains a causation requirement which Mukamal did not meet at the summary judgment phase in the case below. The Summary Judgment Order is therefore affirmed.

## III. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. The Bankruptcy Court's "Order Granting Motion for Summary Judgment on Count 1" and Final Judgment are **AFFIRMED**.

2. This matter is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 29th day of March, 2020.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE